**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TERRANCE LAMONT BAGBY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-10-1086-D** |
| | ) | |
| **JUSTIN JONES,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner appearing *pro se*, brings this action seeking a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).

Respondent has filed a response to the Petition and filed the relevant state court Trial

Transcript (T. Tr.), the Original Record (O.R.), the Supplemental Original Record (Supp.

O.R.), and the Trial Exhibits (T. Ex.).  Petitioner has filed a Reply, and the matter is at issue.

For the following reasons, it is recommended that the Petition be denied.

**Procedural History**

Petitioner was convicted of trafficking in cocaine base after two or more drug-related

felonies and sentenced to life imprisonment without the possibility of parole in the District

Court of Oklahoma County, Case No. CF-2008-2573.  *See* O.R., p. 111.[1]  Petitioner filed a

---

[1]Petitioner was found not guilty of possession of proceeds derived from a violation of the
Uniform Controlled Dangerous Substance Act (Count II).  *See* O.R., pp. 1, 77.

direct appeal and the Oklahoma Court of Criminal Appeals (OCCA) affirmed. *See* Response, Ex. 3.

## Summary of Evidence at Trial

The OCCA summarized the evidence presented at trial as follows:

On the evening of April 25, 2008, Oklahoma City Police Officers Andrew Waldon and Jason Blosser were on patrol in the northeast part of town. They were driving separate vehicles. They saw a group of people congregated in the front yard of a home, and decided to stop. As Officer Waldon approached the group, he saw [Petitioner] (who was among the group) look towards him, then immediately turn around and begin walking to the back yard. Waldon followed, and watched as [Petitioner] turned the corner of the home and ducked behind a city trash bin. Waldon testified that he observed [Petitioner] toss something to the ground. Officer Blosser, who was following Waldon, testified that he also observed [Petitioner] toss something as he moved behind the trash bin. [Petitioner] was placed under arrest. He had over $1300 in cash in his wallet. A baggie found on the ground near [Petitioner] was seized, and a police chemist determined that it contained over five grams of cocaine base, or "crack" cocaine.

Response, Ex. 3, pp. 1-2.

## Petitioner's Claims

Petitioner raises seven grounds for habeas relief. His first four allegations assert error in the second (penalty) stage of trial. In Ground One, Petitioner alleges that the jury was improperly instructed that life without the possibility of parole was a sentencing option. Petition, p. 4.[2] In Ground Two, Petitioner complains about erroneous reliance on "transactional offenses" to enhance his sentence. *Id.* Petitioner alleges in Ground Three that the admission of evidence regarding prior convictions allowed the jury to see information

---

[2]The Petition is not properly paginated. Therefore, reference herein to the page numbers reflects the Court's Electronic Case Filing (ECF) pagination.

that was irrelevant and highly prejudicial.  *See id.*, p. 5.  Finally, in Ground Four, Petitioner

argues that the cumulative effect of these errors in the sentencing stage of the trial denied him

"a fair sentencing trial."  *Id.*

      In the remaining claims, Petitioner challenges alleged errors in the first (guilt) stage

of trial.  In Ground Five, Petitioner argues that the trial court allowed testimony which

contained references to irrelevant and prejudicial "other crimes evidence."  *Id.*  In Ground

Six, Petitioner challenges the sufficiency of the evidence of trafficking in cocaine based on

the admission of evidence with an "incomplete chain of custody."  *Id.*  Finally, in Ground

Seven, Petitioner argues that his trial counsel was ineffective for failing to challenge the

chain of custody with respect to the drug evidence.  *Id.*, p. 6.

      Petitioner's allegations regarding the first-stage trial errors have been addressed first,

followed by an analysis of his claims regarding the second-stage trial errors.

## Standard Governing Habeas Review

      When the OCCA denies a claim on the merits, the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA) provides the standard for habeas review.  Under the AEDPA,

habeas relief may be granted only if the OCCA's adjudication of the merits of a federal claim

has resulted in a decision that was "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States .

. . ."  28 U.S.C. § 2254(d)(1).  Under this standard, judicial review is directed to the result

of the OCCA's decision, not its reasoning.  *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th

Cir. 2004) ("[W]e defer to the OCCA's decision unless we conclude that its result - not its

rationale - is 'legally or factually unreasonable.'") (citing *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

A decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[T]he AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). Thus, the AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __U.S.__, 131 S.Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted). The AEDPA further mandates that factual findings made by a state trial or appellate court are presumed correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## Analysis of Alleged First-Stage Trial Errors

## I. Ground Five - Admission of "Other Crimes" Evidence

In Ground Five, Petitioner alleges that two of the State's witnesses testified in a manner that suggested Petitioner had a "propensity to be both a drug dealer and a member of the violent criminal subclass . . . ." Petition, p. 5.  Particularly, Petitioner argues that the State elicited testimony that: (1) he was arrested in a "high crime," "high drug," and "high gang" location where a homicide had recently taken place; (2) he had been "in jail" and "through the system a few times;" and, (3) police officers believed he had been selling drugs before the officers detained him.  *Id.*; *see also* Response, Ex. 1, pp. 32-33.[3]

On direct appeal, the OCCA rejected this claim.  The appellate court held:

> The officers testified that they had received numerous complaints and observed various kinds of criminal activity in the neighborhood where [Petitioner] was arrested.  They made clear, however, that they had never met [Petitioner], and had no reason to suspect him of any criminal activity before arriving on the scene.  While [Petitioner] claims the officers made several references to his being a drug dealer, the officers were not commenting on [Petitioner's] past conduct or reputation. Rather, they were offering inferences which could be made about the amount of cocaine involved in this case, the manner in which it was packaged, and possible source of the large amount of cash [Petitioner] was carrying.  And in fact, many of the references [Petitioner] complains of were elicited on cross-examination, as defense counsel attempted to suggest that [Petitioner] was essentially being prosecuted for being in the wrong part of town.

Response, Ex. 3, pp. 9-10.

---

[3]In his Petition, Petitioner indicated his desire to seek habeas relief based on "the merits of his substantive claims he raised within his direct appeal."  Petition, p. 3.  Because Petitioner is *pro se*, his claims must be broadly construed and the undersigned has thus considered Petitioner's direct appeal brief for clarification on some of his claims.

As a general matter, issues regarding the admissibility of evidence are matters of state law and are not subject to review in federal habeas actions. *See Estelle v McGuire*, 502 U.S. 62, 67-68 (1991); *see also Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) ("Generally speaking, a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief."). Thus, this Court should "'not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant [a fundamentally fair trial].'" *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (citation omitted). Having examined the entire record, the undersigned recommends denial of habeas relief on Ground Five for the following reasons.

The State's first witness was Oklahoma City Police Officer Andrew Walden. He testified that he was assigned to a section of Oklahoma City which was a high crime area complete with "high drug and high gang activity." T. Tr., p. 249. Officer Walden explained that the police department had been getting complaints about increased drug and gang activity which led him to spend more time patrolling the area. *See id.*, pp. 250-51. During one of those patrols on April 25, 2008, Officer Walden approached a group of eight to ten people "kind of hanging out." *Id.*, pp. 249, 251. When Officer Walden approached, Petitioner walked away. *See id.*, pp. 252-53. Officer Walden testified that in his training and experience, when someone walks away "[t]hey're up to something" and it sets off a "red flag." *Id.*, p. 254. Based on that, Officer Walden decided to make contact with Petitioner. *See id.*, pp. 254-55. As the officer followed Petitioner, he saw Petitioner attempt to hide

6

behind a dumpster and then pitch a white sack - an action which  to the officer was "consistent with him throwing down something illegal." *Id.*, p. 256.  Officer Walden detained Petitioner and found $1,355.00 on his person.  *See id.*, p. 258.  When asked whether he often arrested people carrying a large amount of money, the officer stated:  "Most of the time whenever it's a drug arrest, you'll see . . . significant amounts of money at times." *Id.*, p. 259.

Officer Walden testified that he later questioned Petitioner about the money, specifically asking about Petitioner's employment.  *See id.*, pp. 261-62.  Petitioner told the officer that "he hadn't worked any since he had gotten out of jail recently[]" and that the money had come from his wife to pay for "court costs." *Id.*, p. 262.  Officer Walden testified that he and another officer had secured the drugs and the money and that in his experience and training, someone with that amount of "dope" and money is "selling and doing drugs or making drug transactions." *Id.* pp. 259, 263.  The officer explained:

> The drugs we found doesn't sound like a whole lot, but value-wise on the street, you can make some really quick cash. . . . And the 1300 or so dollars, and that's a lot of money to come up with if you're not working anywhere right now, and just based on everything we had seen, we just - - we really felt like that he had, for the most part, spent that day out running around making drug transactions . . . .

*Id.*, pp. 263-64.

Officer Walden further testified that in his experience the plastic bags drug dealers use are "wrapped very tightly." *Id.*, p. 267.  Because Petitioner's plastic bag containing the drugs was so large and contained such small "rocks," Officer Walden opined that the bag had

originally contained more drugs which Petitioner had already sold - accounting for the $1,355.00. *Id.*, pp. 267-68.

On cross-examination, Officer Walden reiterated that his patrol location was a high crime area and stated that there had been a recent homicide in the area. *See id.*, pp. 270-74, 280. However, the officer admitted that he had never stopped or approached Petitioner in the area before and had never arrested anyone who admitted buying drugs from Petitioner. *See id.*, pp. 274-75. Officer Walden also admitted that he could not affirmatively say that the money had come from the proceeds of drug sales and was only relying on his "training, experience, and the totality of the circumstances" to make that assumption. *Id.*, pp. 275-77. When asked whether the money could have been for "court costs," Officer Walden stated that Petitioner had "been through the system a few times" but that he did not know how much money Petitioner might have owed the court. *Id.*, p. 300.

On re-direct examination, Officer Walden again stated that he had no direct knowledge of whether Petitioner had been selling or distributing drugs and agreed that Petitioner was not charged with those crimes. *See id.*, pp. 309-310.

Oklahoma City Police Officer Jason Blosser also testified that the location where Petitioner was detained was known for criminal activity including a recent homicide, gang fights, and drug transactions. *See id.*, pp. 327-28. Officer Blosser testified based on his own experience that often when he has arrested people in the past with large amounts of cash, "it's consistent with . . . either buying . . . [or] selling . . . narcotics[.]" *Id.*, p. 336. Officer Blosser opined that the $1,355.00, consisting of "eleven $100 dollar bills, eight 20s, eight 10s, and

8

three $5 bills," found on Petitioner's person, was consistent with selling crack cocaine" and was therefore "drug proceeds."   *Id.*; *see also id.*, pp. 340-42.   However, Officer Blosser admitted that he had no first-hand knowledge regarding whether the money had come from drug sales and that he was only expressing his personal opinion.  *See id.*, pp. 342-45.

Examining the entire proceedings, including the strength of the evidence against Petitioner, the undersigned finds no violation of due process.  *See Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) ("[i]nquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner . . . .").  Petitioner was charged with both trafficking and possession of drug proceeds.  *See* O.R., p. 1.  Despite the police officers' comments that Petitioner had been detained in a "high crime" location and had previously been "to jail," and the interjection of their personal opinions that Petitioner had been selling drugs, the jury acquitted Petitioner on the charge of possession of drug proceeds, demonstrating the lack of prejudicial effect.  *See id.*, p. 77.

Moreover,  Petitioner's trafficking conviction was clearly supported by substantial evidence that he knowingly possessed more than 5 grams of cocaine base.  Both police officers testified that they personally witnessed Petitioner throw down a package which was later determined to contain 5.37 grams of cocaine base.  *See* T. Tr., pp. 256-57, 288, 290-96, 323-24, 331-333.  Based on that evidence alone, there is no indication that Petitioner's trial was rendered fundamentally unfair by the police officers' testimony allegedly suggesting other wrongs or bad acts.

## II.  Ground Six - Insufficiency of the Evidence

In his sixth ground for relief, Petitioner alleges that the evidence was insufficient to support his trafficking conviction.  Petitioner's argument in support of this claim is two-fold. He asserts that the chain of custody with respect to the cocaine was incomplete, and as a result, the chemist's testimony regarding his analysis and quantification of the alleged cocaine should not have been admitted.  Petition, p. 5.  Petitioner then concludes that absent the chemist's testimony, the evident was insufficient to prove the elements of trafficking in an illegal substance.  *See id.*

The OCCA rejected this claim on direct appeal, citing the *Jackson* standard and holding that:

> The purpose of the chain of custody rule is to guard against substitution of or tampering with the evidence between the time it is found and the time it is analyzed.  While the State may be required to establish that physical evidence it offers is in substantially the same condition as it was when it was obtained, it is not required to negate all possibility of alteration.   If there is only speculation that tampering or alteration occurred, it is proper to admit the evidence and let what doubt there may be go to its weight, rather than render the evidence completely inadmissible.  State's Exhibit 1, a baggie of crack cocaine, was admitted at trial without any objection from the defense.  Both police officers identified State's Exhibit 1 as the object they retrieved on the night of [Petitioner's] arrest.   When the police chemist testified, defense counsel had only one question about chain of custody; the chemist conceded he did not know how many hands the envelope had passed through. . . . [W]e find no plain error in the admission of the contraband.  The evidence, viewed in a light most favorable to the State, was sufficient to support the conviction. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787, 61 L. Ed. 2d 560 (1979); *Spuehler v. State,* 1985 OK CR 132,  ¶ 7, 709 P.2d 202, 203-04.

Response, Ex. 3, pp. 10-11.

Petitioner's attack on the admissibility of the chemist's testimony based on the chain

of custody is without merit for purposes of federal habeas relief.  As previously discussed, generally, federal habeas relief "does not lie to review state law questions about the admissibility of evidence . . . ."  *Wilson v. Sirmons*, 536 F.3d 1064, 1101 (10th Cir. 2008) (citation omitted) (holding further that "[a]bsent a showing that the admission of the evidence violated a specific constitutional guarantee, a federal court on habeas review will not disturb the state court's evidentiary ruling unless it was 'so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process[]'").

According to the undisputed evidence presented at trial, Officer Blosser took custody of the bag Petitioner threw on the ground, weighed it, and placed it in a sealed envelope.  *See* T. Tr., p. 334.  The officer placed his name, initials, commission number, and date on the outside of the sealing tape and submitted it to the "OCPD drug locker."  *Id.*, p. 335; *see* T. Ex., State's Ex. 1.  Officer Walden identified the evidence envelope and testified that the bag of crack cocaine was in substantially the same condition as when it had been in Petitioner's possession.  *See* T. Tr., pp. 365-66.

William Dennis, a forensic chemist with the Oklahoma City Police Department, testified regarding his examination of State's Exhibit 1:

> State's Exhibit 1 is a package, a heat-sealed package.  Inside it there is a plastic bag.  It has a label on it, an identification label.  This identification label has a case number, item number, date, and my initials.  Also on the outside of this heat-sealed bag are the date and my initials.  The lab number is N08-494.  And this is item one.
>
> . . .
>
> The evidence envelope bears the same case number, N08-494.  I

11

recognize on the evidence envelope as my having received the evidence from
T. Crew.  It bears my signature and the date that I received it.

*Id.*, pp. 320-21.  Although the chemist was unable to decipher every name from the chain of
custody written on the envelope, he emphasized that he had received the envelope in a
"sealed condition."  *Id.*, p. 322.

Petitioner argues that State's Exhibit 1 shows that the bag of cocaine base was
checked out of the "drug locker" three days after Officer Blosser placed it there, but it was
not delivered to the chemist until 64 days later.  Response, Ex. 1, p. 37.  Thus, Petitioner
suggests tampering or contamination, arguing that the relevant issue is "where that baggie
was <u>before</u> it was even received by the chemist."  *Id.*, p. 39.  However, as the OCCA pointed
out, such issues go to the weight rather than the admission of the evidence.  Response, Ex.
3, p. 11.  *See Frederick v. State*, 37 P.3d 908, 937 (Okla. Crim. App. 2001) ("[a]ny weakness
in chain of custody goes to the weight to be given to the evidence and does not prevent
admissibility[]"); *see also Redden v. Calbone*, 223 Fed. Appx. 825, 830 (10th Cir. 2007)
("[F]laws in the chain of custody that might have resulted from the police's handling of the
evidence, such as contamination, 'go to the weight of the evidence, but will not preclude
admissibility' if the government lays a proper foundation for the evidence at trial . . . .'"
(citation omitted)).

State's Exhibit 1 shows that the evidence had been checked out to one or more
individuals several days after Officer Blosser placed it in the "drug locker" but remained
unopened until delivered to the chemist.  *See* T. Ex., State's Ex. No. 1.  This was confirmed

by the chemist.  Moreover, the jury heard the chemist's testimony that he could not identify every name on the chain of custody section of the envelope, and the jury heard testimony and could see from the State's Exhibit No. 1 that the evidence had been "checked out" for approximately 64 days before being delivered to the chemist.  Thus, the chain of custody issue raised here by Petitioner was presented to the jury for consideration and determination as to how much weight to give the testimony.  The undersigned finds based on this record that Petitioner has failed to demonstrate that the chemist's testimony was inadmissible or that the admission of such testimony resulted in a fundamentally unfair trial.

To the extent this claim also raises a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Because the OCCA applied the *Jackson* standard, this Court's task is limited to inquiring whether the OCCA's decision applying that standard was reasonable.  *See Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008).

Under Oklahoma law, the State was required to prove that Petitioner possessed five or more grams of cocaine base to obtain a conviction for trafficking in an illegal substance. *See* Okla. Stat. tit. 63 § 2-415(A)(7), (B)(1), (C)(7)(a); OUJI-CR 6-13; *see also* O.R., p. 85. The chemist identified the substance seized by the arresting officers as cocaine base and testified that the net weight of the substance was 5.37 grams.  Tr. T., pp. 320-325.  As previously determined, that testimony was admissible, and the OCCA reasonably applied

*Jackson* to determine that such evidence was sufficient to support Petitioner's conviction. Petitioner is therefore not entitled to habeas relief based on this claim.

## III.  Ground Seven - Ineffective Assistance of Counsel

In Ground Seven, Petitioner alleges that his trial counsel was ineffective for failing to challenge the alleged break in the chain of custody.  Petition, p. 6.  The undersigned recommends denial of habeas relief on this ground.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), in order to establish that counsel was ineffective, a habeas petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) counsel's deficient performance was prejudicial. *Strickland,* 466 U.S. at 688, 692.  Prejudice is shown if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

On direct appeal, the OCCA found that "[e]ven if trial counsel had been more aggressive in challenging the chain of custody, we find no reasonable probability that the trial court would have (or should have) excluded the contraband outright."  Response, Ex. 3, p. 12.  This was a reasonable application of *Strickland*.

According to the undisputed testimony at trial, two police officers witnessed Petitioner throwing down a bag of what was later identified as 5.37 grams of cocaine base.  That evidence was secured and sealed by one of the police officers and was not unsealed until the chemist opened the evidence to conduct testing.  The jury was aware that another police official had custody of the unopened evidence for a period of time before it was delivered to

the chemist.  The State chemist's testimony regarding the evidence was admissible, and there is no reasonable probability that an objection by trial counsel based on chain of custody issues would likely have resulted in Petitioner's acquittal on the charge of trafficking.

Petitioner has not shown that the OCCA's conclusion was an unreasonable application of *Strickland.*  Petitioner is not entitled to federal habeas relief on Ground Seven.

## Analysis of Alleged Second-Stage Trial Errors

## IV.  Ground One - Improper Jury Instruction

The jury was instructed that "[t]he punishment for Trafficking in Illegal Drugs after 2 or more previous convictions is imprisonment in the State penitentiary for a term of life without the possibility of parole."  Supp. O.R., pp. 14-15.  Petitioner argues that this instruction was erroneous and that the jury should have been instructed that the maximum punishment with two prior non-drug related convictions was life imprisonment.  Petition, p. 4.

In support of this claim, Petitioner first asserts that because the prosecutor offered evidence regarding both non-drug related and drug-related prior convictions, the sentence enhancement was proper only under Okla. Stat. tit. 21 § 51.1.  *See id.*  Petitioner contends further that the court erred because the jury was never informed that in order to impose a sentence of life without the possibility of parole, it must find "drug-related" prior convictions.  *Id.* (emphasis in original).[4]

_____

[4]Two state enhancement statutes are at issue.  Under Okla. Stat. tit. 21 § 51.1 - Oklahoma's general enhancement statute - Petitioner's maximum sentence for trafficking with two prior non-
(continued...)

On direct appeal, the OCCA agreed that "[w]hen a defendant is charged with a drug-related offense, and he has both drug-related and non-drug-related prior convictions, the State must elect which enhancement scheme it wishes to use[.]"  *Id.*, Ex. 3, p. 3.  However, the appellate court rejected Petitioner's suggestion that enhancement under Okla. Stat. tit. 21 § 51.1 was the State's only alternative.  Rather, the OCCA noted that "throughout the proceedings" the court and counsel had been clearly aware that the State was electing to enhance under Okla. Stat. tit. 63 § 2-415(D)(3).  *Id.*, Ex. 3, pp. 4-5.  And, because the State had offered at least three drug-related prior convictions into evidence, enhancement under Okla. Stat. tit. 63 § 2-415(D)(3) was available.  *See id.*, Ex. 3, pp. 3-5.

The OCCA did conclude that because the State was enhancing under Okla. Stat. tit. 63 § 2-415(D)(3) but had offered evidence of both drug-related and non-drug-related prior convictions, the trial court committed plain error when it failed to specify that the jury must find the Petitioner guilty of two prior *drug-related* offenses before imposing a sentence of life without the possibility of parole.  *Id.*, Ex. 3, p. 5.  The OCCA held that "[i]n theory at least, a jury could have found the existence of only one, or none, of the drug-related priors, and improperly imposed the mandatory sentence of life without parole absent the necessary criminal history specified in 63 O.S. § 2-415."  *Id.*

Nevertheless, the OCCA held that the  error was harmless, and therefore did not rise

---

[4](...continued)

drug related felony convictions would have been life imprisonment.  *See* Okla. Stat. tit. 21 § 51.1(C).  Enhancement under Okla. Stat. tit. 63 § 2-415, which carries a *mandatory* life without the possibility of parole sentence, is available only when those two prior felony convictions are drug-related.  *See* Okla. Stat. tit. 63 § 2-415(D)(3).

to the level of a constitution violation. *Id.*, Ex. 3, pp. 5-7. Specifically, the appellate court found that Petitioner had "personally approved a stipulation" which included *"an express concession to the existence, validity, and finality of every prior felony conviction alleged by the State."* *Id.*, Ex. 3, p. 6 (emphasis in original). The OCCA found such stipulation "told the jury that [Petitioner] had conceded those evidentiary issues[,]" leaving the jury to "determine the applicable punishment based on those conceded facts." *Id.* With that finding, the OCCA concluded that the jury had before it stipulated evidence that Petitioner had committed at least two prior drug-related offenses, which is all that was required to impose a mandatory sentence of life without the possibility of parole under Okla. Stat. tit. 63 § 2-415(D)(3). *See id.* Consequently, the appellate court held: "On these facts, the trial court's sentencing instruction, while not completely accurate, did not deny [Petitioner] any constitutional . . . right." *Id.*, Ex. 3, p. 7.

Errors relating to jury instructions in a state criminal trial do not support federal habeas relief "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citation omitted). Thus, "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (citation omitted). Petitioner bears a heavy burden to establish constitutional error based on an erroneous jury instruction. *See Nguyen*, 131 F.3d at 1357.

Petitioner does not raise an independent claim challenging the State's reliance on

enhancement under Okla. Stat. tit. 63 § 2-415(D)(3). Even if he did, such an argument would fail. The OCCA held that as a matter of state law, the prosecutor was entitled to rely on Okla. Stat. tit. 63 § 2-415(D)(3), notwithstanding the evidence of both drug-related and non-drug-related prior convictions. And, the OCCA has the final word on the interpretation of Oklahoma law, particularly in matters of sentence enhancement. *See Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002) (finding state appellate court's interpretation of a state statute binding on federal habeas court); *see also Turner v. Kaiser*, No. 98-6297, 1999 WL 149770, *1 (10th Cir. Mar. 19, 1999) (unpublished op.) ("Issues of enhancement are matters of state law and are not cognizable in a federal habeas proceeding.").

Further, Petitioner does not dispute that he stipulated to having committed at least two prior drug-related felonies, or that with two prior drug-related felony convictions, he was subject to a mandatory sentence of life without the possibility for parole under Okla. Stat. tit. 63 § 2-415(D)(3). Consequently, Petitioner has failed to demonstrate that the challenged instruction rendered his trial or sentencing fundamentally unfair. The undersigned recommends denial of habeas relief for Ground One.

## V.  Ground Two - The Use of Transactional Crimes to Enhance the Sentence

In Ground Two, Petitioner challenges some of the prior convictions used to enhance his sentence. Petition, p. 4. The State presented evidence that Petitioner had been previously convicted of: (1) two drug-related felony counts in Case No. CF-1993-4986; (2) one drug-related felony count in Case No. CF-1999-1542; (3) one drug-related felony count in Case No. CF-1999-4415; and, (4) two non-drug-related felony counts in Case No. CF-1999-5392.

*See* T. Tr., pp. 415-16.

Petitioner argues that because the convictions in Case Nos. CF-1993-4986 and CF-1999-5393 arose out of the same "transactions," the State was prohibited from relying on both convictions from each case to enhance his sentence.  Petition, p. 5; *see also* Response, Ex. 1, pp. 15-22.  In support of this claim, Petitioner relies on Oklahoma law which provides that for purposes of sentence enhancement, prior drug-related convictions must have arisen "out of separate and distinct transactions."  Okla. Stat. tit. 63 § 2-415(D)(3).

Even if , however, the State inappropriately relied on two "transactional" crimes under state law,[5] federal habeas relief would not be available.  Issues of sentence enhancement are generally matters of state law,  not cognizable in federal habeas proceedings.  *See Shafer v. Stratton*, 906 F.2d 506, 510 (10th Cir. 1990) (affirming the district court's rejection of claim challenging state's application of sentencing statutes because such a claim is "concerned solely with matters of state law and thus fails to state a claim cognizable under 28 U.S.C. § 2254"); *Vanwoudenberg v. Booher*, 150 Fed. Appx. 760, 761 (10th Cir. Sept. 28, 2005) (rejecting claim that state improperly applied enhancement statute because alleged error under state law would not support federal habeas relief).

---

[5]On direct appeal, the OCCA held:

> [Petitioner] points out that his six prior convictions arise from four separate prosecutions, two of which had two counts each.  [Petitioner] claims that if correctly counted, he had only three drug-related convictions, and one non-drug-related conviction.  Given our resolution of Proposition I, we find any possible error here to be harmless beyond a reasonable doubt.

Response, Ex. 3, pp. 7-8.

Petitioner's claim for habeas relief on this basis should be denied.

## VI.  Ground Three:  Introduction of Irrelevant and Prejudicial Information

In Ground Three, Petitioner argues that the judgment and sentences the State used to prove his prior convictions contained information relating to his past crimes which was irrelevant and highly prejudicial.  Petition, p. 5.  The OCCA agreed that certain details were irrelevant, but held that "[b]y law, [Petitioner's] stipulated history of drug-related crimes mandated a sentence of life without the possibility of parole, and no amount of arguably prejudicial information could change that result."  Response, Ex. 3, p. 9.

As previously discussed, state law questions regarding the admissibility of evidence are not generally subject to review in federal habeas actions, and this Court should not disturb the state court's admission of evidence of prior crimes, wrongs, or acts unless the admission denied Petitioner a fundamentally fair trial.  *See Nguyen*, 131 F.3d at 1357.

As the OCCA noted, Petitioner was found guilty of trafficking in cocaine base and stipulated that he had previously been convicted of two or more drug-related felonies.  Under those circumstances, a sentence of life without the possibility of parole was mandatory, and therefore, testimony regarding certain aspects of Petitioner's past crimes did not result in prejudice nor in a fundamentally unfair trial.  Consequently, the undersign recommends denial of habeas relief on this ground.

## VII.  Ground Four:  Cumulative Error

In Ground Four, Petitioner alleges that the "cumulative effect" of all the alleged sentencing errors (Grounds One through Three) resulted in the denial of due process.

20

Petition, p. 5.  Again, the OCCA rejected this argument on appeal, specifically finding that although errors did occur in the second state of Petitioner's trial, such errors were "completely harmless" "given [Petitioner's] stipulation to his criminal history and the current state of the law[,]" and thus, "[e]ven when considered cumulatively, these errors cannot be grounds for relief."  Response, Ex. 3, p. 9.

Multiple errors can affect the fundamental fairness of a trial sufficiently to result in a deprivation of due process.  *See Darks v. Mullin*, 327 F.3d 1001, 1017 (10th Cir. 2003); *see also Hamilton v. Mullin*, 436 F.3d 1181, 1196 (10th Cir. 2006) ("The . . . point of [review for cumulative error] is to examine all the actual errors which are *individually* harmless to determine if *together* they render the defendant's trial unfair." (citation omitted; emphasis in original)).  Because under the OCCA's interpretation of state law, the jury had no alternative but to sentence Petitioner to life imprisonment without the possibility of parole - based on the finding of guilt and Petitioner's stipulation to having committed at least two prior drug-related felonies - the OCCA's rejection of Petitioner's claim of cumulative error was reasonable.  Petitioner has not demonstrated that he is entitled to habeas relief based on cumulative error.

## **RECOMMENDATION**

Based upon the foregoing analysis, it is recommended that the Petition for a Writ of Habeas Corpus be denied.  If this recommendation is adopted, Petitioner's requests for an evidentiary hearing and reconsideration of his motions for expansion of the record and appointment of counsel set forth in his Reply should be denied as moot.

Any objection to this Report and Recommendation must be filed in accordance with Fed. R. Civ. P. 72(b)(2). Any such objection must be filed with the Clerk of this Court by the 19th day of January, 2012. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 30th day of December, 2011.


BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE